

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR – 5 2007

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

9310

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

## ORIGINAL

| | |
|---|---|
| ERNEST GOTTDIENER, *on behalf of himself and all others similarly situated and derivatively, on behalf of* TXU CORP., | § § § § |
| Plaintiff, | § § |
| vs. | § § § |
| LELDON E. ECHOLS, KERNEY LADAY, JACK E. LITTLE, GERARDO I. LOPEZ, J. E. OESTERREICHER, MICHAEL W. RANGER, LEONARD H. ROBERTS, GLENN F. TILTON, C. JOHN WILDER, TXU CORP. KOHLBERG KRAVIS ROBERTS & CO., and TEXAS PACIFIC GROUP, | § § § § § § § § § § § |
| - and - | § § |
| TXU CORP., a Texas corporation, | § § |
| Nominal Defendant, | § § § |
| Defendants. | § § |

3-07CV0406-M

CIVIL ACTION NO. _____

**PLAINTIFF'S CLASS AND DERIVATIVE COMPLAINT**

24786

1

## INTRODUCTION

1.    This is a shareholder class and derivative action on behalf of TXU Corp. ("TXU" or the "Company") and its public shareholders against TXU's Board of Directors ("Board") and Kohlberg Kravis Roberts & Co. ("KKR") and Texas Pacific Group ("TPG"), two of the country's lead private equity firms, in connection with defendants' agreement to sell the Company to KKR and TPG (the "Proposed Acquisition") in violation of their fiduciary obligations.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 28 U.S.C. §1332 in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because TXU is headquartered in this District and a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein, occurred in this District. One or more defendants either resides in or maintains executive offices in this District.

### PARTIES

4.    Plaintiff Ernest Gottdiener, a citizen of Florida, has been the owner of shares of the Company since prior to the transaction herein complained of and continuously to date.

5.    Defendant TXU is a corporation duly organized and existing under the laws of the State of Texas with its principal offices located at 1601 Bryan Street, Dallas, Texas 75201-3411. TXU operates as a holding company that manages a portfolio of competitive and regulated energy businesses in Texas. As of November 6, 2006, the Company had outstanding over 459,240,549 shares of its common stock.

6.    Defendant C. John Wilder ("Wilder"), a citizen of Texas, is and has been at all relevant times Chairman, President and Chief Executive Officer of the Company since May 2005; prior thereto President and Chief Executive of the Company (February 2004 – May 2005).

24786

7. Defendant Leldon E. Echols, a citizen of Texas, is and was at all relevant times a director of the Company.

8. Defendant Kerney Laday, a citizen of Texas, is and was at all relevant times a director of the Company.

9. Defendant Jack E. Little, a citizen of Texas, is and was at all relevant times a director of the Company.

10. Defendant Gerardo I. Lopez, a citizen of Washington,, is and was at all relevant times a director of the Company.

11. Defendant J. E. Oesterreicher, a citizen of Texas, is and was at all relevant times a director of the Company.

12. Defendant Michael W. Ranger, a citizen of New York, is and was at all relevant times a director of the Company.

13. Defendant Leonard H. Roberts, a citizen of Texas, is and was at all relevant times a director of the Company.

14. Defendant Glenn F. Tilton, a citizen of Illinois, is and was at all relevant times a director of the Company.

15. The defendants named above in 6 through 14 are sometimes collectively referred to herein as the "Individual Defendants." The Individual Defendants constitute the Board of Directors of TXU and, by reason of their corporate directorships and executive positions, stand in a fiduciary position relative to the Company's public shareholders. Their fiduciary duties, at all times relevant herein, required them to exercise their best judgment, and to act in a prudent manner, and in the best interest of the Company's minority shareholders. Said defendants owe the public shareholders of TXU the highest duty of good faith, fair dealing, due care, loyalty, and full candid and adequate disclosure.

24786

16.     Defendant KKR, a citizen of New York, is a private equity firm specializing in management buyouts, with offices in New York, Menlo Park, California, London, Paris, Hong Kong and Tokyo.

17.     Defendant TPG, a citizen of Texas, is a private investment partnership that was founded in 1992 and currently has more than $30 billion of assets under management. TPG is headquartered in Fort Worth, with offices in San Francisco, London, Hong Kong, New York, Minneapolis, Melbourne, Menlo Park, Mumbai, Shanghai, Singapore and Tokyo.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings Counts IV and V pursuant to Rule 23 of the Federal Rules of Civil Procedure, on his own behalf and as a class action on behalf of all TXU common shareholders (except the defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the defendants) or their successors in interest, who are or will be threatened with injury arising from defendants' actions as more fully described herein (the "Class").

19.     Counts IV and V are properly maintainable as class claims for the following reasons:

a) The Class is so numerous that joinder of all members is impracticable. As of November 6, 2006, the Company had outstanding over 459,240,549 shares of its common stock;

b) There are questions of law and fact which are common to the class including, *inter alia*, the following: (i) whether defendants have breached their fiduciary and other common law duties owed them to plaintiff and the members of the class; (ii) whether defendants are pursuing a scheme and course of business designed to eliminate the public shareholders of TXU in violation of the laws of the State of Texas in order to enrich the buyout group at the expense and to the detriment of the plaintiff and the other public stockholders who are members of the class; (iii) whether the proposed

24786

4

acquisition, hereinafter described, constitutes a breach of the duty of fair dealing with respect to the plaintiff and the other members of the class; and (iv) whether the class is entitled to injunctive relief or damages as a result of defendants' wrongful conduct.

c) Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. The claims of plaintiff are typical of the claims of the other members of the class and plaintiff has the same interests as the other members of the class. Plaintiff will fairly and adequately represent the class.

d) The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

e) Defendants have acted in a manner that affects plaintiff and all members of the class, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the class as a whole.

## DERIVATIVE ALLEGATIONS

20. Plaintiff brings this action, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure derivatively in the right and for the benefit of TXU to redress injuries that have been suffered and are continuing to be suffered by TXU as a direct result of defendants' violations of law. TXU is named as a nominal party in this derivative action solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

21. Plaintiff will adequately and fairly represent the interests of TXU in enforcing and prosecuting its rights, and has retained counsel experienced and competent in litigating complex actions and shareholder derivative litigation.

24786

22.    Plaintiff is an owner of TXU stock and was owner of TXU stock during times relevant to defendants' illegal and wrongful course of conduct alleged herein.

23.    Any demand made by plaintiff to the TXU Board to institute this action is excused, as it would be a futile and useless act based on all the allegations in this Complaint and defendants' actions to date, including the Individual Defendants': (i) failure to protect the interests of TXU and its shareholders by refusing to pursue value-maximizing alternatives; (ii) agreement to unlawful provisions contained in the Merger Agreement, (iii) use of the sales process to negotiate personal benefits for themselves; and (iv) agreement to cause the Company to incur $24 billion in additional debt in connection with the Proposed Acquisition. The Board consists of nine directors, all of whom are defendants in this action. These defendants maintain complete voting control over any decisions required to be made by the Board, including any action to be taken in response to a demand made by shareholders. Each of the members of the Board has directly participated in the wrongs complained of herein, which disables them from acting independently, objectively or in good faith in response to a demand by shareholders. The Board and senior management are not disinterested or independent as detailed herein and set forth below:

     a)   Each of the Individual Defendants serves on the TXU Board and was charged with oversight and operation of the Company and the conduct of its business affairs. Each of the Individual Defendants has breached the fiduciary duties owed to TXU and its shareholders by, among other things, approving the Proposed Acquisition and failing to take reasonable steps to protect and advance the interests of TXU and its shareholders;

     b)   Each of the Individual Defendants has taken steps to cause the Company to assume $24 billion in additional debt in connection with the Proposed Acquisition;

     c)   Certain of the Individual Defendants, including defendant Wilder, will reap tens, if not hundreds of millions of dollars in special benefits from the consummation of the Proposed Acquisition, including being allowed to roll over their equity stake into the

24786

6

surviving company and/or receiving change-of-control benefits such as the acceleration of stock options and restricted stock;

d) Even though certain Individual Defendants claim to be independent directors because they are not directly employed by the Company, none of these defendants are truly independent and have demonstrated their alignment with Company management by supporting each and every course of action favored by Company management, including voting in favor the merger agreement; and

e) As more fully detailed herein, the Board participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from TXU's shareholders or recklessly and/or negligently disregarded the wrongs complained of herein.

24.     The Individual Defendants named herein have not exercised and cannot exercise independent or objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of the Board members has participated in and/or acquiesced in the misconduct alleged herein.

25.     The directors of the Board have demonstrated their unwillingness to act in compliance with federal or state law or sue themselves and/or their fellow directors and allies in the top ranks of the corporation for failure to do so, as they have developed professional relationships with their fellow board members who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

26.     TXU's senior insiders and directors herein have shown their interests to be antagonistic to TXU and this lawsuit as they have used the sales process to obtain specific benefits for themselves, refused to maximize shareholder value for TXU and its shareholders, and have voted to cause to the Company to assume $24 billion in additional debt in connection with the Proposed Acquisition. The members of the Board have not and will not authorize a suit against themselves as

24786

Group to buy the Company with even less cash upfront. The Investor Group contemplates finding other investors to ante up cash for the Transaction.

31.     KKR and TPG are each putting up about $2 billion in cash. Goldman Sachs, Lehman Brothers, Morgan Stanley and Citigroup, collectively, plan to invest $3 billion from their private equity arms bringing the cash total to only $7 billion, $1 billion short of the $8 billion required.  JPMorgan Chase, Morgan Stanley and Citigroup are providing the $1 billion equity bridge.

32.     The press release further stated that based upon the unanimous recommendation of the Strategic Transactions Committee comprised of purportedly independent TXU directors, the TXU board of directors has approved the Merger Agreement and has recommended that TXU's shareholders adopt the agreement.

33.     Under the terms of the agreement, TXU shareholders will be offered $69.25 in cash for each share of TXU common stock held representing a premium of 15 percent to the closing price of TXU shares on February 22, 2007.

34.     TXU has 3 businesses and, after the buyout, the Company will be reorganized so that these businesses are independently operated businesses: generation, transmission and distribution, and retail.

35.     The Investor Group seeking to acquire TXU pledged that if its $32 billion buyout bid is successful it will hold on to the utility for at least five years and will not load any acquisition-related debt onto the utility.  The statement by Texas Energy Future Holdings LP, a holding company formed by KKR and TPG and other investors, came in response to Texas lawmakers' criticism of the Transaction.  Under the Proposed Acquisition, the surviving entity could emerge with as much as $33 billion of debt.  Such debt could lead to higher costs for consumers.

24786



such a suit would require these defendants to expose themselves to a huge personal liability to TXU due to the particular language of currently utilized directors' and officers' liability insurance policies (*i.e.*, the insured vs. insured exclusion), such an action would not be an insured claim.

27.     The underlying misconduct of the Individual Defendants is not a product of a valid exercise of business judgment, and cannot be properly ratified by the Board.

## BACKGROUND

28.     On February 26, 2007, TXU reported over the *PR Newswire* that TXU executed a definitive merger agreement under which an investor group led by KKR and TPG will acquire TXU in a transaction valued at $45 billion (the "Merger Agreement"). Goldman Sachs Corp., Lehman Brothers, Citigroup and Morgan Stanley intend to be equity investors with KKR and TPG at closing (the "Investor Group"). Under the terms of the Merger Agreement, shareholders will be offered $69.25 per share at closing, for each TXU share that they own (the "Transaction"). This leveraged buyout would be the largest ever.

29.     The Transaction requires $8 billion of cash upfront, $24 billion of new debt and the assumption of approximately $13 billion in debt. A substantial amount of debt for the buyout will be issued at TXU Energy Co. and secured by substantially all of that unit's assets. Another portion would be in the form of unsecured notes issued by the parent company. TXU has commitments from financial institutions for $24.6 billion of debt financing for the Transaction.

30.     The Investor Group has secured debt financing in the amount of $24 billion. The banks are also lending $1 billion to the Investor Group not as secured debt, but in the form of equity using the bank's own cash. Known as an "equity bridge," the arrangement allows the Investor

24786

Texas legislators said they feared the new owners could pile enormous debt on the regulated energy-delivery business, called Oncor, and then demand rate relief at the Texas Public Utility Commission. If the relief wasn't granted, the owners could put the utility under bankruptcy protection, possibly pitting a federal bankruptcy court against state officials, the lawmakers have said.

36. TXU disclosed on March 2, 2007 that its purchasers have lined up $24.6 billion in debt financing to complete the deal. The new debt would be heaped on top of TXU's current debt of about $13 billion, pushing the utility's total debt close to $37 billion. The TXU disclosure indicates that the buyers would contribute less than $8 billion to the deal. In its annual financial report filed with the SEC, TXU said a "substantial majority" of the new debt would be added to its retail energy division and none would be added to the transmission business, the only regulated part of its business.

37. Fitch Ratings service said because of the disclosure, it expected to downgrade the credit of TXU and its subsidiaries again, from double-B-plus to single-B, further into junk-bond territory. A debt load of nearly $37 billion would put TXU's debt-to-cash flow ratings higher than Dynegy Corp. and much higher than other rivals such as Mirant Corp. and NRG Energy Inc. One analyst has noted that TXU can handle the debt load as long as its power-generation business keeps producing strong earnings. TXU benefits from high electricity rates in Texas and the lack of new power plants being built. However, the Company could be squeezed by an economic downturn or falling natural gas prices, which would cause rates to fall.

38. In short, the level of debt in the KKR-Texas Pacific deal, combined with TXU's junk-bond status, could mean higher borrowing costs and ultimately higher rates to consumers.

24786

39.     The Transaction is expected to close in the second half of 2007, subject to receipt of shareholder approval and required federal regulatory approvals, as well as satisfaction of other customary closing conditions. There is no financing contingency associated with the Transaction.

40.     Credit Suisse Securities and Lazard acted as financial advisors to TXU in connection with the Transaction. Sullivan & Cromwell LLP and Cravath, Swaine and Moore LLP acted as outside legal advisors to TXU and the Strategic Transactions Committee, respectively, in connection with the Transaction.

41.     Citigroup, Goldman Sachs, JP Morgan, Lehman Brothers and Morgan Stanley acted as financial advisors to the Investor Group. Simpson Thacher & Bartlett LLP, Vinson & Elkins LLP, Covington & Burling LLP, Hunton & Williams LLP and Stroock & Stroock & Lavan LLP acted as legal advisors to the Investor Group.

42.     The Company may terminate the Merger Agreement under certain circumstances, including if its board of directors determines in good faith that it has received a superior proposal, and otherwise complies with certain terms of the Merger Agreement. However, in connection with such termination, the Company must pay a fee of $1 billion to the Investor Group, unless such termination is in connection with a superior proposal submitted by certain persons who made such a proposal prior to the end of the go-shop period of April 16, 2007. If a bid is received within this brief window of time, the termination fee will be $375 million.

43.     Although members of management, including Chairman and Chief Executive John Wilder, purportedly have made no commitments to stay with the Company should the

24786

11

Transaction go through, ***it is anticipated*** that they will remain with the Company following the Transaction.

44.    Others have also allegedly earned illicit profits from the deal. On March 2, 2007, *Forbes* reported that the Securities and Exchange Commission won a court order to freeze $5.4 million in assets of investors suspected of trading on inside information related to the blockbuster TXU buyout:

> The SEC said in a complaint in a Chicago federal court that the purchase of call options came from foreign accounts in the days before TXU ... announced its $45 billion leveraged buyout on Feb. 26 by Kohlberg Kravis Roberts & Co., Texas Pacific Group and Goldman Sachs . . . .
>
> The court order required the unknown call options purchasers to identify themselves and orders them not to destroy evidence.
>
> As buyouts and other mergers and acquisitions transactions continue to heat up, insider trading has become an issue of increasing concern among regulators. The SEC has already been probing whether some employees at investment banks are tipping favored hedge fund clients with details of upcoming transactions to keep or win more business.
>
> On Thursday, the SEC unmasked an alleged scheme by current and former employees of Morgan Stanley . . ., Bear Stearns . . . and UBS . . ., and employees of three hedge funds. The SEC and federal prosecutors in New York accuse them of trading on inside information, including advance word of research recommendation upgrades or downgrades and tips on deals in the works. The SEC says the ring netted some $15 million in profits over six years.

45.    The Transaction serves no legitimate business purpose for TXU public stockholders. The Transaction is designed to serve the business purposes of the Investor Group only, without regard to the interests of the public stockholders of TXU.

46.    Furthermore, the public common stockholders of TXU are not receiving fair value for their holdings in connection with the Transaction. The proposed plan will, for a grossly

24786

inadequate consideration, deny plaintiff and the other members of the class their right to share proportionately in the future success of TXU and its valuable assets, while permitting the Investor Group to reap huge benefits from the Transaction.

47. Indeed, on February 27, 2007, just days after announcing the Proposed Acquisition, or the three months ended Dec. 31, 2006, TXU reported net income of $475 million, or $1.03 a share, up from $356 million, or 74 cents a share, a year ago. Excluding one-time items, earnings from ongoing operations totaled $556 million, or $1.21 a share, narrowly beating the $1.20 per-share earnings analysts surveyed by Thomson Financial had been looking for. Full-year earnings for TXU totaled $2.55 billion, or $5.46 a share, compared with $1.71 billion, or $2.50 a share, in 2005.

48. Moreover, defendants have failed to take those steps necessary to ensure that the Company's shareholders will receive maximum value for their shares of TXU common stock. Defendants have failed to conduct an active auction or to establish an open bidding process in order to maximize shareholder value in selling the Company.

49. The Investor Group and the Individual Defendants have clear and material conflicts of interest and are acting to better the interests of the Investor Group and themselves at the expense of TXU's public stockholders.

50. KKR has had longstanding relations with TXU Chief Executive Wilder, and TPG.

51. Defendant Wilder, who has expressed a desire to stay with the Company, stands to reap a rich payday. He negotiated a lucrative compensation package three years ago, when TXU was in the doldrums. By some estimates, he may now be eligible for well over $100 million in

24786

13

payments, reflecting the full vesting of several large stock allotments called for under his complex five-year employment contract. Mark Reilly, a partner at pay consultant 3C, Compensation Consulting Consortium, said ambiguity in the wording of some documents, such as TXU's proxy statement, made a detailed estimate difficult. But he said the contract could be valued at as much as $200 million at the current stock price.

52. On March 2, 2007, the Company announced over *PRNewswire* that director Dr. E. Gail de Planque had resigned from the TXU Corp. Board of Directors. According to the release, "Dr. de Planque's resignation avoids any perception of a potential conflict of interest arising out of her historical professional relationships within the industry."

53. According to the release:

> [I]n her letter of resignation, Dr. de Planque noted that, as a result of the advice of outside counsel to both TXU and the Strategic Transactions Committee of the Board of Directors of TXU and the recommendation of the Board, she had recused herself from all discussions about the proposed merger announced February 26. In light of the expected continuing deliberations of the Board of Directors relating to the proposed transaction, Dr. de Planque decided, consistent with the views of the Board and outside counsel to TXU and the Strategic Transactions Committee, that it was in the best interests of all parties concerned that she resign effective immediately.

54. KKR and TPG have aided and abetted the breaches of fiduciary duty described herein. Without KKR and TPG, the Transaction could not be effectuated.

55. As a result of the defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that the nature and value of their investment in TXU will be compromised for the sole benefit of the Investor Group. Unless the Transaction is

24786

14

enjoined by the Court, defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

56. Defendants KKR and TPG have conspired in, and aided and abetted, the breaches of fiduciary duty described herein. The Company, through its management, has participated in the conduct described herein, and, in that the Transaction, if allowed to proceed, will result in the public shareholders being forced to cash out of their desired investment (and the future benefit they hoped to enjoy therefrom) with the Company then ceasing to exist, the Company must be forced to ensure that its public shareholders enjoy every benefit and obligation owed to it by the Individual Defendants.

### Buyouts by Private Equity Firms Are Often Skewed Due to Conflicts of Interests and Often Do Not Result in the Highest Price Reasonably Obtainable for Shareholders

57. According to an article that appeared in *The Wall Street Journal* on September 8, 2006, the process through which a Company is sold to private equity buyers is generally skewed in favor of the Company's management. *The Wall Street Journal* article highlights this conflict as follows:

> In such cases [where a company is being sold to private equity firms], management, with all its detailed knowledge of the company, goes from being a seller striving for a high price to being a buyer looking for an attractive price. Usually the sale of a public company involves an auction or a competitive-bidding process. But when management joins the private-equity buyers, there often isn't such an open procedure, and the process is especially fraught with potential conflicts of interest.
>
> * * *
>
> *There is little that is more important to a private-equity firm than courting the management of a potential target. A critical part of the wooing process is to offer management lavish incentives.*

24786

15

*Those incentives generally involve as much as a 10% stake in the reorganized company -- far more than managements can usually hope for either as a public company or from a strategic buyer.* If management hits financial and operational targets set by the new owners, the executives generally receive stock and options. If the executives exceed those targets, they get more of both. And when the company is recapitalized or goes public, the executives often get windfalls valued at hundreds of millions of dollars.

\* \* \*

While some boards are diligent in vetting deals, the process sometimes is skewed in favor of a sale. For example, there usually is a period when other bidders can come forth with offers. But if that window is short, the likelihood of a rival bid emerging isn't large, since potential buyers won't have time to perform due diligence. *Special committees charged with weighing deals also can set breakup fees that make rival bidders pay dearly to get rid of the original buyer.* [Emphasis added].

58.     Indeed, the formation of so called "clubs" (as the Investor Group has formed in the present case) to acquire a publicly held corporation has become the subject of a probe by the Department of Justice, which has reportedly begun an inquiry into potentially anticompetitive behavior among leading private-equity firms. According to an October 11, 2006 article in *The New York Times*, this inquiry "appear(s) to be the beginning of a wide-ranging inquiry into private equity ..." which has become a concern given that the industry, which "has become an increasingly powerful force on Wall Street in recent years remains relatively unregulated." According to news reports, among the issues that could come under scrutiny is the private equity firms' practice of joining together on some bids. According to *The New York Times* article, this issue has become of particular concern since "[w]hen firms get together to form consortiums, or clubs, as they are known in the industry, to bid on a specific company, that could have the effect of limiting competition and

24786

thus artificially depressing the price of takeover bids — and hurting corporate shareholders in the process."

59.    Defendants KKR and TPG have aided and abetted the breaches of fiduciary duty described herein.

60.    Plaintiff and the other members of the Class have no adequate remedy at law.

## COUNT I

### Derivative Claim Against the Individual Defendants for
### Abuse of Control

61.    Plaintiff repeats and re-alleges each allegation above set forth herein.

62.    The Individual Defendants employed the alleged scheme for the purpose of deriving material personal benefits for themselves as part of the Proposed Acquisition.  As part of this scheme, defendants have caused the Company to undertake $24 billion in additional debt to facilitate the Proposed Acquisition.

63.    The Individual Defendants' conduct constitutes an abuse of their ability to control and influence TXU.

64.    By reason of the foregoing, TXU has been irreparably harmed.  Only through the exercise of the Court's equitable powers can the Company be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT II

### Derivative Claim Against the Individual Defendants for
### Gross Mismanagement

65.    Plaintiff repeats and re-alleges each allegation above set forth herein.

66.    The Individual Defendants had a duty to TXU and its shareholders to prudently supervise, manage and control the operations and business of TXU.

24786

67.     The Individual Defendants, by their actions and be engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of TXU in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, the Individual Defendants breached their duties of due care, diligence and candor in the management and administration of TXU's affairs and in the use and preservation of TXU's assets.

68.     During the course of discharge of their duties, the Individual Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet the Individual Defendants cause TXU to engage in the scheme complained of herein and which they knew had an unreasonable risk of damage to TXU, thus breaching their duties to the Company.  As a result, the Individual Defendants grossly mismanaged TXU.

69.     By reason of the foregoing, TXU has been irreparably harmed.  Only through the exercise of the Court's equitable powers can the Company be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT III

### Derivative Claim Against the Individual Defendants for
### Corporate Waste

70.     Plaintiff repeats and re-alleges each allegation above set forth herein.

71.     By failing to properly consider the interests of the Company and its public shareholders, and causing the Company to undertake $24 billion in additional debt in connection with the Proposed Acquisition, the Individual Defendants have caused TXU to waste valuable corporate assets.

72.     As a result of the Individual Defendants corporate waste, they are liable to the Company.  Only through the exercise of the Court's equitable powers can the Company be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

24786

## COUNT IV

### Class and Derivative Claim For
### Breach of Fiduciary Duties Against the Individual Defendants

73. Plaintiff repeats and re-alleges each allegation above set forth herein.

74. The Individual Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to the stockholders of TXU and have placed personal interests ahead of the interests of TXU stockholders, causing damages for which plaintiff seeks compensation.

75. By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, will unfairly deprive plaintiff and other members of the Class of the true value of their TXU investment.

76. Defendants have failed to take steps to maximize the value of TXU to benefit the public stockholders and have embarked on a process that avoids competitive bidding and provides the Investor Group with an unfair advantage by effectively excluding other potential acquirors or alternative transactions.

77. The Investor Group dominates and controls the business and corporate affairs of TXU, and possesses proprietary information concerning them. This results in an imbalance and disparity of knowledge between the Investor Group and other stockholders which makes the process used herein inherently unfair.

78. The Individual Defendants have violated their fiduciary duties by engaging and endeavoring to enter into the Transaction without regard to the fairness of the Transaction to TXU stockholders and the fiduciary duties owed to plaintiff and the other public stockholders of TXU. The Individual Defendants have also breached their duties of loyalty and due care by not taking adequate measures to ensure that the interests of TXU's public stockholders are properly protected from overreaching by the Investor Group.

79. By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

24786

80.     As a result of the actions of individual defendants, plaintiff and the Class have been and will be irreparably harmed in that they have not and will not receive their fair portion of the value of TXU's stock and businesses and will be prevented from obtaining a fair price for their stock.

81.     Unless enjoined by this Court, individual defendants will continue to breach the fiduciary duties owed plaintiff and the Class, and may consummate the Proposed Acquisition to the disadvantage of the public stockholders.

82.     Individual Defendants have engaged in self-dealing, have not acted in good faith to plaintiff and the other members of the Class, and have breached and are breaching fiduciary requirements to the members of the Class.

83.     As a result of the individual defendants' activities, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive a fair portion of the true value of TXU's assets and will be prevented from obtaining the real value of their ownership interest in the Company.  Unless the Offer is enjoined by the Court, and a fair process substituted, individual defendants will continue to breach their fiduciary duties to plaintiff and the members of the Class, will not engage in arm's length negotiations on the Offer terms with the buyout group, and will not supply to TXU's stockholders sufficient information to enable them to cast informed decisions on the Offer.

84.     Plaintiff and members of the Class have no adequate remedy at law.

## COUNT V

### Class and Derivative Claim For Aiding and Abetting
### Breaches of Fiduciary Duty Against KKR and TPG

85.     Plaintiff repeats and re-alleges each allegation above set forth herein.

86.     KKR and TPG aided and abetted the Individual Defendants in breaching their fiduciary duties owed the public shareholders of TXU, including plaintiff and the members of the Class.

24786

20

87.    The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

88.    By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

89.    KKR and TPG colluded or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

90.    KKR and TPG agreed to participate in the breach of the fiduciary duties by the Individual Defendants to the purpose of advancing their own interests.  KKR and TPG will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches.  KKR and TPG will benefit, *inter alia*, from the acquisition of the Company pursuant to a defective sales process at a grossly inadequate and unfair price if thee Proposed Acquisition is consummated.

91.    Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff demands judgment against the defendants jointly and severally, as follows:

A.    Declaring and decreeing this action to be a Class action and certifying plaintiff as class representative and counsel listed below as Class Counsel;

B.    Declaring and decreeing that the Proposed Acquisition agreement was entered into in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

C.    Enjoining, preliminarily and permanently, the consummation of the Proposed Acquisition, unless and until the Company adopts and implements procedures or process to comply with applicable law;

24786

21

D. Directing defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of TXU and its public shareholders;

E. To the extent, if any, that the transaction or transactions complained of are consummated prior to the entry of this Court's final judgment, rescinding such transaction or transactions, and granting, *inter alia*, rescissory damages;

F. Imposition of a constructive trust, in favor of plaintiff and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

G. Awarding plaintiff the costs and disbursements of this action, including a reasonable allowance for the fees and expenses of plaintiff's attorneys and experts; and

H. Granting plaintiff and the other members of the Class such other and further relief as may be just and proper.

24786

## JURY TRIAL DEMAND

Plaintiff and the proposed class demand a trial by jury on all issues so triable.

Dated: March 5, 2007

Respectfully Submitted,

_[signature]_

OF COUNSEL:

BULL & LIFSHITZ, LLP
Peter D. Bull, Esq.
18 East 41st Street
New York, New York 10017
Tel: 212-213-6222

STEPHEN L. HUBBARD
State Bar No. 10140500
ROBERT W. BIEDERMAN
State Bar No. 02301050
DAVID M. GROSSMAN
State Bar No. 00787598
HUBBARD & BIEDERMAN, L.L.P.
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Fax: (214) 857-6001
E-mail: slhubbard@hblawfirm.com
E-mail: rwbiederman@hblawfirm.com
E-mail: dmgrossman@hblawfirm.com

ATTORNEYS FOR PLAINTIFF

24786

**DE CEIVED**

**MAR – 5 2007**

JS 44 (Rev. 10/06)

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
Ernest Gottdiener, on behalf of himself and all others similarly situated and derivatively, on behalf of TXU CORP.,

**DEFENDANTS**
Leldon E. Echols, Kerney LaDay, Jack E. Little, Gerardo I. Lopez, J. E. Oesterreicher, Michael W. Ranger, (SEE ADDITIONAL SHEET)

(b) County of Residence of First Listed Plaintiff **Dade**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Dallas**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

ORIGINAL

(c) Attorney's (Firm Name, Address and Telephone Number)
STEPHEN L. HUBBARD, ESQ.
HUBBARD & BIEDERMAN, LLP (SEE ADDITIONAL SHEET)

Attorneys (If Known)

**3-07CV0406-M**

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury – | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities – | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

### V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Sec. 1332

Brief description of cause:
Shareholder Derivative Action

### VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ injunction, other

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

### VIII. RELATED CASE(S) PENDING OR CLOSED
(See instructions) JUDGE _____  DOCKET NUMBER _____

DATE
03-05-07

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**ADDITIONAL INFORMATION PAGE**
**(FOR CIVIL COVER SHEET)**


DEFENDANTS (CONTINUED)

Leonard H. Roberts, Glenn F. Tilton, C. John Wilder, TXU Corp., Kohlberg Kravis Roberts &
Co., and Texas Pacific Group - and - TXU CORP., a Texas corporation, Nominal Defendant


(c)     Stephen L. Hubbard, Esq.
        Hubbard & Biederman, LLP
        1717 Main Street, Suite 4700
        Dallas, Texas 75201
        (214) 857-6000

        Peter D. Bull, Esq.
        Bull & Lifshitz, LLP
        18 East 41st Street
        New York, NY 10017
        (212) 213-6222